May it please the Court, my name is Nathaniel Garrett and I represent the appellant Tyrone Davis. I endeavor to save about four minutes for rebuttal and I will watch my own clock. In United States v. Austin, this Court held that it was bound to follow Justice Sotomayor's concurrence in Freeman v. United States. None of Justice Sotomayor's fellow justices adopted her reasoning. To the contrary, the four-justice plurality concluded that she had adopted an erroneous rule, and the four-justice dissent characterized her reasoning as arbitrary and unworkable. Austin thus adopted as law of the circuit the Supreme Court's least popular answer to the question presented in this case. When and under what circumstances may a defendant who is sentenced after entering into a Rule 11c plea agreement seek modification of his sentence under Section 3582? This Court should overrule Austin, and it should hew to the principle that under Marks v. United States, a plurality or a concurring opinion is binding only if it is the logical subset of other broader opinions, such that it represents a position implicitly approved by a majority of the justices concurring in the judgment. Let me ask you a question about that. Let's assume that Justice Sotomayor's opinion in that case produced, every time it granted relief, the rest of the plurality, the rest of those concurring in the judgment would grant relief, and it produced no case in which she would grant relief, in which the rest of the plurality concurring in the judgment would not grant relief. Would it then be the controlling opinion? Your focus on logic to me suggests that if we have a — if there are no outliers, as there would be under Justice Sotomayor's opinion, we would nonetheless reject the opinion as the controlling opinion. Isn't it results we look at, not logic? No, Your Honor. Well, to be fair, since 1977 when Marks was decided, the Federal courts of appeals have essentially adopted two different tests. One does look at results. We reject that test for a number of reasons and urge the Court to do the same. But let me answer your direct question, which was what if the results are always subsumed within the plurality? And that's a better way of putting it. Opinion. It would be a harder case, but it's still — there's still a problem with that approach, and we urge the Court to reject it. And the reason is it still results in anti-majoritarian cases like this one, where in effect you're taking one justice's reasoning and applying that to future cases. And so that's the real nub of the problem, is that you have eight justices who have said Justice Sotomayor's — the way she just approaches this question is incorrect. Let me ask — I understand your point. Let me ask the question slightly differently. Let's assume — and let's assume for a moment your case does not fall within the Sotomayor rule. I know you make an argument that it might. We actually concede for purposes of odd bank that we do not fall. Okay. But let's assume that your case does not fall within the Sotomayor rule. We grant you relief. The Supreme Court grants cert. Who wins? The answer, based on history, is I don't know. Let me give you an example. No, I think you know. And that's why I'm not sure you should be — You know and you don't like the answer. Well, we are arguing for majoritarian rule, Your Honor. But let me give you an example. Foddle, which was submitted to this Court by the government. Foddle is a case that answered the exact same question as King v. Palmer, which is, under Delaware Valley, should we — should plaintiffs' attorneys get a bump for the risk of nonpayment? Foddle said, we're going to count noses, and we think that they should. The D.C. Circuit said, we're going to do the logical subset rule and independently conclude they shouldn't. The Supreme Court took that case again because they hadn't decided it, and in the city of Burlington, they agreed with the D.C. Circuit. But in this case, they have decided it. They've addressed — once you concede that you don't fall within Justice Sotomayor's rule, they have addressed the very situation that comes in this case. They were unable to agree on reasoning, but they agreed on a result. Don't you know how your case comes out? Well, again, Your Honor, there's two problems with that. One is what I've described, the anti-majoritarian problem. The other is you're counting dissents, which is in itself a big problem. Number one, it contravenes Marx, which tells you to look at the justices concurring in the opinion. And number two, it raises, in my mind, severe constitutional problems with Article 3, because what you're doing, in effect, is you're taking dicta, which is what a dissent is, and you are counting that dicta to — to — to derive a controlling rule. And that has never been what the Supreme Court has — has instructed. And, in fact, several courts have rejected that approach. It also, by the way — Now, a number of the circuits followed Sotomayor, as Austin did, and there's been some petitions for cert that they've denied? I — I honestly don't know the answer. I would suspect, but I don't know the answer. I think they have. So — As a matter of fact, don't all the circuits who have considered this issue, except the D.C. Circuit, agree with Austin? Yes, Your Honor. Nine do. First, the third, the fourth, the seventh, the eighth, the tenth, and until now, the ninth. But — but let's — let's talk — Seven to one. But let's talk about those opinions, Your Honor. Many of them do not expressly announce their reasoning. The ones that do talk about how — going to just Judge Hurwitz's question, they assume that Justice Sotomayor's opinion is a logical — a perfect logical subset of the pluralities. And it's not. It's not a logical subset because there are situations, as Duval and Epps describe, where a criminal defendant would get relief under the plurality opinion, but not — Let me talk to you about that for just a second. Sure. There's a footnote in Judge Berzon's dissent in the per curiam opinion that discusses the possibility, right, that the sentencing guideline by the parties is considered to be, say, a cocaine sentencing guideline, whereas by the — the judge, it's considered — by the district court judge as career criminal. Correct. That's one example. Now, doesn't Judge Sotomayor's language solve that, as Judge Kavanaugh pointed out? In other words, the applicable sentencing guideline is the only one we should consider if the — if the parties have chosen the wrong sentencing guideline, right, then she wouldn't grant relief. No, Your Honor. As Judge Williams explains in Duval, she hasn't answered the question at all because that part of 1B1.10 wasn't even enacted yet. What — what Judge Williams explains as applicable may very well mean and may sensibly read to mean what the parties have chosen to base the sentence upon. Do you have any case that's actually granted sentence reduction under the plurality rule that hasn't granted it under Justice Sotomayor's rule, or vice versa? No, Your Honor. No, of course not. Well, let me — let me suggest one to you and see if this covers it. There's a case out of the Northern District of Illinois called United States v. Rodriguez in which the judge used a 20-to-1 ratio rather than the 100-to-1 ratio, but then played with the rest of the guidelines and ended up at the same sentence. Would Justice Sotomayor grant relief in that case? What — what did the plea — what did the plea agreement say? It gave — it gave — the plea agreement gave a sentence that would have been okay under the old — under the old guidelines. The judge — the judge rejected the old guidelines because he didn't like 100-to-1 and he did 20-to-1. Assume — sorry. And — and so — but he ends up in the same place. Justice Sotomayor would grant relief under that case, would she not, because he had worked through the guidelines all the way. Would Justice Kennedy? It depends what the district court judge says. If the district court judge says, I don't think — let's say — I don't want to tweak — In other words, the judge rejects the guidelines. Yes. I don't want to tweak your hypothetical, but let's take Kimbrough, where the United States Supreme Court says a judge may reject the guidelines, specifically 2D1.1, because of the racial disparity it creates, and may say, I just reject that as a matter of policy from this — from this case. So you can imagine a situation where the parties work through the analysis, 2D1.1, and the district court says, I reject the guidelines in this case. I think they're completely far too harsh. But I'm going to consider the other 3553 factors, and because of those, I'm going to accept the plea agreement, a very dangerous criminal, et cetera. In that case, you would have relief under Justice Sotomayor, but not Justice Kennedy. And I think this is — I think this is one of those cases. That's why I was asking. Let me ask the following question. I'm trying to figure out how your position plays out. We're not supposed to look at Justice Sotomayor's position under your argument. We have no law. Is that what comes out of this, out of your position? And we're then free to make up our mind as to how we think this ought to come out? We urge you to come out the way that King v. Palmer decides the issue, which is, once you decide there's no — Counsel, counsel, forgive me for interrupting, but this is a really important question. Sure. Your position — to just answer Judge Fletcher's question, please. Is it your position that there's no controlling rule that emerges from Freeman? There is one controlling rule, which is that — is that criminal defendants are not categorically barred from seeking relief under 3582 if they entered into a Rule 11c plea. What we do say is — Because that's the reasoning that — as opposed to the result, the reasoning that both Justice Sotomayor and Justice Kennedy agree to? Because that's the one thing you know all five justices absolutely agree upon. Based on reasoning, not result? Based on result. Well, yes. Well, based on both in the sense that their reasoning leads them to the conclusion that you can't categorically bar — Yes, but you understand what I'm asking. I'm trying to get at — my understanding is your position is that we have to look at reasoning. Yes. Yes. In order to find — But if that's so, why don't we look at the reasoning that Justice Sotomayor has and the reasoning of those in the dissent? And we know, as Justice — as Judge Hurwitz has suggested to you, if we just count noses, I know how the case is going to come out. If it is one that doesn't match Justice Sotomayor's category and agrees with what the dissent says, your guy loses. So the question is, you say look at the reasoning. Well, I just did. But, Your Honor, you're counting — you're counting the reasoning of the four dissenting justices. Of course I am. I'm looking at the reasoning of the nine justices. I'm trying to figure out how they're going to come out with a case that's presented to them. And if I conclude looking at all nine, the reasoning that they've announced, that five to four are going to have your client lose, why doesn't your client lose? Because you can take that into account as a discretionary matter in deciding what the rule ought to be, but that's not the controlling opinion of the case, because historically, under the command model of precedent, a dissenting opinion is not controlling. It doesn't bind — Well, you know, Marx is a kind of a shorthand. If you look back, for example, this may be outside, this may be to a federal court sort of deep into the weeds, but if you look back at the old Tidewater opinion, everybody just counts up the rationales of the various justices. They don't do a Marx analysis. They just look at the rationale and the reasoning to determine what was the rule that comes out of that case. Well, frankly, I think the Supreme Court has been all over the map in terms of how they actually apply the Marx test since they announced it. I mean, in certain cases like Grutter or Nichols, they just throw up their hands and say we're not even going to engage in this. So when you switch from — What's your strongest case for the proposition that we should not count the dissents of reasoning when we're doing a Marx analysis? The courts that have addressed this, Your Honor, King v. Palmer addresses this, United States v. Robeson. What's your strongest single case for that proposition? Well, I think the case is King v. Palmer, United States v. Robeson. In Claiborne v. Ryan, this Court acknowledges — What's your strongest single case for that proposition? King v. Palmer. Counsel, can you help me? This is an odd 11C1C agreement given the oral amendment that the parties negotiated. And I have the same question for Mr. Morgan when he gets up. But there is no stipulation with regard to criminal history category. The parties agreed that it was a base offense level of 34, but there really isn't anything else that is even tied to the guidelines in the plea agreement. There are several things tied to the guidelines. But, again, we're not contending that we would prevail under Justice Sotomayor's opinion right now. But there are other things. For example, at ER 37, they talk about the acceptance of responsibility under 3E1.1. And the government says specifically, and we will consider the guidelines in making our determination whether to move for this reduction. But the problem I have with the way this thing went down is the parties stipulated to a sentence of 18 years, basically. But then the defendant was given the right to argue for less than 18 years. We don't know what the government could or would have done had the court departed downward. It's just I've never seen an 11C1C agreement like this. I agree. It is odd. As I understand it, it had partially to do because a new counsel had come in. But I agree. I can't tell if the government was saying, and if he reduces, we're still bound or not. It's just not clear to me. But your brief says that because the plea agreement was modified, this court is not required to invoke Justice Sotomayor's concurrence. Yes, that was the argument before the panel. What's the argument today? The argument today is that this court should adopt the logical subset test and therefore look at, and this goes to Judge Fletcher's question, and therefore look at all of the opinions in Freeman and decide which is the appropriate opinion to adopt. But don't we go back? Let's go back to Judge Fletcher's question. Isn't your position that there is no controlling opinion in Freeman? Yes. And what rule we derive from Freeman is a different question than whether there is a controlling opinion. Yes. And my only point is that I'm not suggesting the court should willy-nilly cast off everything that has come before it. Clearly, what the Supreme Court said, the different reasoning the justices had. Well, we're not free to adopt the minority position. Correct. Because we know that five justices of the court have at least said that relief is available under some circumstances. But are we required to choose between the other two? No. I think there could be, for example, a modification of Justice Sotomayor's very rigid test, which, for example, she says what matters to me is what the parties say in the agreement. But further, I would require them to hit, you know, every factor, the guidelines, et cetera, et cetera. I'm seeing your proposed rule having a lot of Supreme Court cases that the Ninth Circuit or any circuit saying, well, it doesn't stand for anything, so we can do whatever we want. And that seems a bit lawless to me. I think the Supreme Court thinks they're saying something. But, Your Honor, the – If we use the least common denominator. But, Judge Callahan, I mean, the fact is that the logical subset rule has been around now for at least two decades, and the Supreme Court has not suggested that's a wrong way of looking at it. In fact, they have several cases where that's exactly the kind of analysis they conduct. Frankly, I think the Supreme Court, it is time for them to weigh in and explain how to go about this. Well, I think if we adopt the test you're saying we should adopt, they will weigh in. Well, look at – And maybe not on the other circumstances. I don't know. I'm not sure about that, Judge Callahan. I mean, look, the government cited the Glossip case from last term. You can find a lot of cases, that's one of them, where Justice Sotomayor expressed her view of Marx. You can find a lot of cases where there is sincere and deep disagreement with the notion that something is controlling unless there is a fundamental reasoning that enjoys a majority of the justice. There's a problem with your argument if I were to use Venn diagrams to diagram this. The only area where the circles would overlap is the concurrence in the judgment, the bottom line, if I'm looking at Justice Sotomayor's opinion versus the plurality. I would agree with you if that means it includes the conclusion that criminal defendants are not categorically barred from seeking relief under 3582. I'd like to reserve the remainder of my time. Thank you. Roberts. May it please the Court. Michael Morgan for the United States. The government would submit that this Court is simply not free to adopt a logical rule because the Supreme Court has at least on three occasions applied Marx in a fashion that is inconsistent with that rule. So if the Supreme Court does not interpret Marx in that fashion, I would submit that this Court simply is not free to do so. Let me ask you about those occasions because as I look at them, they all lack one thing that troubles me about this case. And that's the question of whether or not the so-called controlling opinion would produce a result in which only one person on the Court agreed. In those other cases, I don't think that was the case. I believe that is correct. Is that true here? Is it true here? We've talked about Justice — Judge Bey asked the question and several others asked the question. Are there cases in which the application of Justice Sotomayor's opinion would grant relief in which eight other people would not? Within the framework of the Freeman decision and the way the case was presented to the Supreme Court, I would say no. And I want to qualify that because the case as presented to the Supreme Court and as decided by the Supreme Court was a case in which there was no dispute that both the agreement and the defendant were subject to sentencing under 2D1.1. So when you read the pluralities decision and they talk about of course the guidelines are being taken into account because the Court is considering the guidelines and deciding whether to accept or reject the plea agreement, the Court is taking as a given that the 2D1.1 guideline is the applicable guideline that the Court is applying. The problem that you have when you start looking at the variance that Judge Williams started to discuss in the D.C. Circuit is that was a fact pattern that wasn't present in Freeman. And it's not 100 percent clear to me that the plurality would go along with that analysis. And let me give you the case. Sotomayor's reasoning, that relief would not be granted in that case, isn't it? If you apply their reasoning. Well, I'm actually not 100 percent sure of that either, and I will explain why. But for example, if you have a case where the parties have a negotiated 11C agreement tied to 2D1.1 and the Court instead calculates, decides no, the defendant is subject to sentencing as a career offender, if the levels don't match up, like happened in this Court's pleasant decision, and the Court nevertheless accepts the agreement, well, the Court in that sense is varying down and accepting the agreement. But change your facts a little. Change the facts slightly. What if the Court rejects the old sentencing guidelines and says I'm not going to have 100-to-1, I'm going to do 20-to-1 or 10-to-1, because I think that's the better way to do it. But then I found all this other stuff, so I end up in the same place anyway. How does that one come out under the majority's view? I guess in that circumstance, when you say you're rejecting the 100-to-1 ratio, you're not necessarily rejecting 2D1.1 as the applicable guideline. You're just suggesting that I don't like the ratios within that guideline. But it's you can't. I'm refusing to apply that guideline. I think that guideline is barbaric and I refuse to apply it. Most my conscience will allow me to do is 10-to-1. Well, within the – I would suggest that within the Kimbrough framework, you're not refusing to apply the guideline. You recognize that's the applicable guideline. You're just choosing to vary down. And you're choosing not to follow it. I wouldn't say that, you know, you're just free to say this guideline doesn't apply in this case, because it certainly does. But even if, if you accept the premise that there might be some outlier that could theoretically generate a result that, assuming that the plurality would hew to its analysis in a sort of career-friendly context and say, well, the judge is accepting the plea agreement, and the plea agreement is tied to 2D1.1, ultimately, the sentence is still based on that agreement. And it's still based on that guideline, because it's a – that's – when you accept that agreement, you are accepting that guideline. That's what it is. But you're – no, but you've changed it. Now you're telling me, even assuming the majority would come out differently and now you've pushed it back into the plurality's opinion. Let's see. I just – if there is a case in which the – of which eight people on the Court would not agree with the result produced by Justice Sotomayor's opinion, assume if there is one, then how can her opinion be the controlling rule? Well, the best analogy I can come up with is the Supreme Court's decision in Rapanos v. United States. That was another 4-1-4 decision where Justice Kennedy issued an opinion that most of the time would match up, but wouldn't all the time. And in this Court, in the Fairwater's case, adopted Justice Kennedy's plurality as the controlling opinion, citing to a Seventh Circuit case that recognized that there might be this one outlier instance where it didn't match up. But since, as a – for all intents and purposes, there was legitimate – you know, it was legitimately a subset, it was sufficiently predictive to be controlling. And I think that's kind of the key thing here, is that Marx is, in a way, a shorthand. It's a shorthand for essentially counting noses. Now, when you have a pure Marx case where, like Marx itself, where you have a case that's a very broad rule and then a more narrow rule, but it's – no one would dispute that it's a logical subset, you don't have to count the noses because in that circumstance it's just a heuristic. You can say, yes, in this circumstance it applies. The same thing if you have a pure result case where you may have different rationales, but one rationale always yields a more narrow result. And that would sort of be, like, for example, Graham v. Florida, where the Court, you know, adopted Justice Kennedy's view about proportionality for Eighth Amendment purposes, which was much more narrow than Justice Scalia's view. But it's always going to produce a subset. Again, in that circumstance, Marx is operating as a heuristic. You don't have to count the noses. But there are going to be cases where when you – where a nose counting is going to have to take place. And that actually makes sense because when the Supreme Court decides a case, they're deciding a case. They don't sit to decide one-offs. They're trying to divine a rule. And for a lower court, unfortunately, when they have a fractured decision, doesn't have the luxury of casting it aside or just saying, well, we'll start over. The court has to attempt to apply it. And if the court – Can I interrupt for a minute? And I want to follow along with precisely what you're doing. And I'm trying to figure out the difference between a rule that is established by the United States Supreme Court that we are bound to follow as distinct from nose counting that will allow us to predict what the Supreme Court will do in a future case. Is it a rule that we are bound to follow if we can predict that we're going to get a case in one of these plea bargains under subsection C that the dissenters would say, sorry, you don't get a sentence reduction. And Justice Sotomayor would say, you don't get a sentence reduction. Even though, of course, they arrive at this by very different routes. Is that a rule that we are bound to follow? Or is that merely a prediction of what the Supreme Court is likely to do based upon the rationales that they have expressed in the Freeman case? In the hypothetical that you've given me where the facts are going to shake out that the plurality is going to say no relief and – not the plurality, excuse me. The dissenters are going to say no relief and the concurrence is going to say no relief. Right. In that circumstance, I think, yes, Justice Sotomayor's concurrence is the rule that will apply. Again, it's the more narrow of the rule. It's a common sense rule now. So my question is how do you get a rule then out of four dissents when the dissents were not giving us a rule at all? They were just objecting to the rule that the plurality was trying to establish. Why is that a rule rather than merely a prediction? Well, it is predictive. Of course, it is a prediction. But why is it more than that? Well, it's more than that because – again, well, first off, let me back up. I'm not 100 percent clear that the Court can't combine dissents and a concurrence to get a holding. The Supreme Court's done it on one occasion. So if the Supreme Court can do it with their cases, arguably this Court can, too. And if this Court can, then in your hypothetical you would get the rule because you would combine those dissents and the concurrence. Concurrence is still more narrow. It's narrow in the sense that the dissenting justices would never grant relief. And again, you have Justice Sotomayor who would sometimes grant relief, not always, but sometimes. So her position is more narrow in that it's not staking out such a broad rule. So even in that position, I think that you can divine a rule. Here's a reason. You're saying we're not supposed to count dissents, but then you're saying you've seen – but you've seen the Supreme Court do that. The Supreme Court has done it, and they did it in League of United Latin Americans v. Perry, where the Court combined the dissent in the Vieth case with Justice Kennedy's concurrence, and Justice Kennedy, who was writing for that case, said, well, add those three up together and that's the holding, and that holding is unchallenged in this case. So they can do it. They can do whatever they want. Well, that's true. But we're bound by what they've told us to do. Well, but again, I would suggest that if the Supreme Court believes that that's an appropriate method of divining the rules going forward from a case, that that makes sense. And if you look at the Vieth case, that actually makes perfect sense. Well, let me back up on it, because I'm still stuck on this almost but not quite semantic point, difference between rule and prediction. It's hard for me to get out of the ordinary usage of these terms a rule or a holding based upon what people say in the dissent, because they disagreed with what the decision was, and we treat that as a dissent and a disagreement. And to translate that into holding, when I combine it with rationale out of the concurrence, is a little odd in terms of usage. It may also be a little odd just in the sense of how judges behave. Dissents are sometimes, how do I want to say this, they're not necessarily considered in the same way that majority holdings are that actually produce the result. You sometimes get talk in dissent that's a little looser, a little broader. And so for me to look to a dissent as a source of law is a different exercise from looking  It is, and I would suggest that it's only in the rare case where you're going to need to do that. But I would point out that that's But this apparently is one of them in your view. I'm not prepared to concede that, again, because I'm not 100 percent sure that the plurality would in fact, you know, hew to its analysis given the change in fact pattern of Judge Williams' hypothetical. But even assuming that to be the case, that's how this Court resolves its own fractured in-bank opinions. As an analytic and logical matter, there's no reason why the Court should apply a different rule when you have a fractured Supreme Court case where you can't divine an easy Marx analysis. One of those heuristics where something is always more narrow than the other, where you have some potential for like the oddity where you have one judge taking a position that eight justices would disagree with in one case. You should be able, when you're confronted with those facts, this Court shouldn't have to say, well, we know that eight judges, eight justices of the Supreme Court would not grant relief, but because the concurrence would, we're going to grant relief in this case. No. I think the Court should be able to say, look, this is the rationales underlying the Supreme Court's decision. We know that eight judges are going to reject that view. We're not going to adopt that rule just to have it come screaming back from the Supreme  Court. So I think that that's an appropriate analytical framework when confronted with a sufficiently fractured decision. And, again, it's not all decisions are going to be that fractured. But I would suggest that all the easy Marx cases, again, they're just heuristics for the nose counting that you would be doing anyway. It's just that when they're not easy, that breaks down and that's sort of the last resort to try to make sense of what the Supreme Court decided. Counsel, I wanted to get back to a question that Judge Tallman had for your colleague. It concerns whether this really is an 11C1C plea. If you look at the language in 11C1C and then you look at what happened here where the defendant was allowed to argue at sentencing for a lower sentence, in my years as an AUSA, I've never heard of that in the context of an 11C1C. Can you address that, please? I can. And I have two answers, one legal and one factual. Legally, in Mr. Bride's first or second appeal, the panel actually held that it was an 11C1C, so that's kind of law of the case at this point. Well, but we're here in Embank, so. Well, we're here in Embank, but I think the law of the case doesn't. You said Mr. Bride. You mean Mr. Davis, don't you? Mr. Davis, yes. I get the two confused sometimes. Okay, but fair enough. So that's your first response. They didn't really address the issue, though, in the prior panel. Well, it was definitely front and center, because that was a core argument that the defense was making, was that this wasn't an 11C1C, and therefore these rules didn't apply. And the panel was like, no, it's an 11C1C. So I think they did decide it. As a factual matter, what happened was at sentencing, there was a change in attorneys, and the attorney basically, to get some credibility with his client, needed to be able to come in and do something at sentencing, because he had come in after the agreement had already been accepted. But why did you agree to it? Why didn't you just say, counsel, here's the deal, and that's the deal the government agreed to, and if you want to back out of it now, then the deal is off and we're going to trial? It wasn't about backing out. I guess it's perhaps an example of no good deed goes unpunished, is that trying to sort of just essentially help the defense counsel throw him a bone so that he could do something and not make his client happy. But had Judge Leighton sentenced to anything less than 18 years, you would have declared that the deal was off and now we're. Well, that's probably true, but I think that that's the fact. That's not an 11C1C agreement. Well, it kind of is, because that's the whole point of an 11C1C. It is if we win, but not if we lose. Well, no. It's the point of an 11C1C is that if the judge rejects the sentencing stipulation, the parties are free to back out. Right. And the defense recognized that if the judge was convinced to sentence below, the government was free to back out. So it still had its 11C1C character. It was still, you know, the character of the plea agreement didn't change. But if, counsel, if we hold that, in fact, it was not an 11C1C plea agreement, then do we get, would you, what's your position then? Can they then seek resentencing? Yes. If this is not an 11C1C agreement, I mean, yes, I believe he can, because in that circumstance, well, let me back up. He's not going to be barred. He's not going to be barred by the Freeman rule. Right. I would take the position in that circumstance, and this is, to be fair, not been briefed, because no one has ever really litigated this, but this, I would argue that this sentence wasn't based on the guidelines in any way. This sentence was not tethered to 2T1.1 in any fashion. It was a below-guideline sentence that had absolutely nothing to do. But you didn't pick 18 years out of the air. I mean, somebody must have been looking at guidelines at the time that the negotiations were underway. Well, looking at the guidelines in the sense of this is the range, but again, we didn't even know what the real, there was a serious dispute about what the actual guideline range was between the defense and the prosecution. Where did the 18 years come from? Frankly, kind of picked out of the air. The tooth fairy brought it? In a sense. I mean, not to be glib, but in a sense. Because what happened here is you had. I mean, logically, and you can correct me if I'm wrong, it's based on the government's evaluation of the guideline range that would apply and the defense's contrary argument, and then based on the parties' respective differences, you came up with something that you thought was fair and appropriate. Right? But the guidelines being a starting point I don't think can legitimately be disputed if the parties are consulting the guidelines and negotiating off of their view of which guidelines apply and how it applies. Well, no court that I'm aware of has ever held that simply because the guidelines are in the parties' minds during plea negotiations renders a subject, a sentencing guideline based on the guidelines within the meaning of 3582C2. I mean, this Court in Bride flat out rejected that position, that simply because the parties took into account the guidelines in their plea bargain. But the agreement talked about the court engaging in the same process. I mean, that's the reality of how it works. The court looks at the guidelines and makes a determination as to whether the parties' 11C1C agreement stipulated sentence is appropriate given the guidelines. Doesn't the court also use the guidelines as a starting point? And then looking at the 3553 factors. It does in the sense of whether in the 11C1 context to accept or reject the agreement, but I would still take the position that the sentence is ultimately the function of the agreement. And getting back to the plea negotiations, one has to remember that the 2D1.1 guideline is only one factor. And, in fact, again, this case wound up being untethered to that guideline because. But that's the driving factor. Well, respectfully, not necessarily. Why not? Not necessarily. Was it what the district judge here said at 37, right, at the first sentencing? Yes. That's a pretty, I mean, you're starting off at a pretty high level. Yes. But, you know. I mean, it's what anchors the whole thing is that 2D1.1 table. Well, yes. But, again, when you're talking about when you pick a sentencing range that, again, is below the guidelines. And it's not any fixed percentage below the guidelines. Well, you know, at the second resentencing, after the remand when he was resentenced on remand, the district judge made the point that both in the, under the circumstances the 18 years was a fair and just sentence. But it was also, in light of the guidelines, it was reasonable and fair. Well, yes. Because at the time. It was clear that he was anchoring to the guidelines. At the time of the second sentencing, the sentence, the stipulated sentence happened to be within the guidelines. I mean, that's the oddity of this case is that it started out as a below-guidelines sentence. Then by the time it comes back for resentencing, it's a mid-guidelines sentence. And then by the time it comes back for resentencing again, it's a below-guidelines sentence, which I think just sort of proves the point that this is so, this sentence is so totally not tethered to the guidelines. It really wasn't. But as you point out, there are stipulations with regard to enhancements and reductions that are right out of the guidelines. Some. Acceptance of responsibility, the base offense level, quantity. But there were a lot of things that weren't subject to stipulation, you know, criminal history category, role in the offense. I see my time is up. So. Again, so there were many other factors that weren't tied to the guidelines. So again, to say that this is sort of based on, and again, this is the key, a sentencing range, not just the guidelines. It's got to be the sentencing range for purposes of 3582C2. And when you have a below-guidelines sentence that's just in a plea agreement that doesn't spell out all the guideline calculation, you just can't determine that the sentencing range is actually based on the guidelines. Thank you, counsel. Rebuttal. Thank you, Your Honor. Three points. First, I haven't talked much about the Rule 11C1C issue, but obviously we stand by the arguments. But why isn't this, if it's not 11C1C, then wouldn't it just be a straight plea and the court's free to set whatever sentence it is, chooses to fashion? That's true, Your Honor. I think the judge would be free to set. And assuming he set 216, I think it's clear that in that context we're out of Sotomayor land, because we're not talking about Rule 11C. And as Judge Paez noted on ER22, the judge says, I'm considering the guidelines, here's the guideline range, 18 years is fair and reasonable. Well, he said under the guidelines, I think an 18-year sentence is fair and reasonable. Correct. But why shouldn't we just decide the case by declaring it's not really an 11C1C agreement, and then we can avoid all this? I think that would be an appropriate resolution, Your Honor. Assuming the Court doesn't go that way, second, I want to talk about Rapinos, because that case was mentioned, and I think it's a good illustration. The courts of appeals have struggled with Rapinos, what rule to apply. This Court did adopt the concurrence. Other courts have adopted the concurrence and the plurality. I think what that proves is that under the logical subset rule, we wouldn't really end up in a different place than we already are, which is the courts would simply be able to recognize there was no common ground, so we have the discretion to choose an appropriate test, and I think they would come out pretty much how they've come out already, which is some would say concurrence, some would say plurality and concurrence, and we'd be in the same place. I also think the dissent in Rapinos is really important and interesting, because the cases that have been cited for where the dissents are used to sort of count predictive results, those are Rapinos cases. And I would urge the Court, in addition to King, Judge Rawlinson asked me about a case that really goes to the dissents issue, I would urge the Court also to look at United States v. Johnson, which does look at the dissent. But why? Because it says in Rapinos the dissent made the point of saying we agree with the plurality. Whenever they would find jurisdiction, so would we. We agree with the concurrence. Whenever they would find jurisdiction, so would we. In effect, you almost have a logical subset situation where the dissent is saying we would go further than them, but in every situation we would agree. That's very different than this case. So when they said in Marks that we're not supposed to look at dissents, that was just throwaway? No, no. My primary point, Judge Tallman, is that we shouldn't look at dissents. My secondary fallback point is if you do, if you do look at Johnson, because what Johnson says is maybe it's appropriate in those cases where the dissent logically agrees with everything the other justices are saying and just disagree with the outcome. That's far different from here, where the dissent disagreed with the reasoning of plurality. It's very different in count noses in that situation. And the last thing I want to hit on is this point, and it's absolutely fair to be worried that we're not being sufficiently respectful to the Supreme Court. Of course that's a legitimate concern. But there are going to be many cases, two of them were mentioned yesterday in the en bancs, Williams, Yu, Lee, and Alvarez, where you are going to have a Marks subset. And there are going to be a lot of cases where even though there's a fractured opinion, you're going to be able to divine the correct result. May I just finish my thought? I'm very closely done. But in those rare cases where the Supreme Court has not divined one reasoning that a majority can agree on, we submit it's not disrespectful in that circumstance to say this is no different than a 4-4 opinion. We haven't been given majority guidance. And in that situation, of course we look to what the Supreme Court has done. Of course we're guided by it, but we're not bound by it. Thank you, Your Honors. Roberts. Thank you, counsel. Thank you both for your arguments this morning. They've been very helpful to the Court. And the case will be submitted for decision. We'll be in recess.
judges: Thomas, Fletcher, Paez, Tallman, Rawlinson, Callahan, Bea, Christen, Nguyen, Hurwitz, Owens